J-A12027-21

2021 PA Super 199

| CASCADE FUNDING MORTGAGE TRUST 2017-1 | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 321 MDA 2020 |
| CHARLEEN L. AND MICHAEL S. SMELTZER | : | |

Appeal from the Judgment Entered May 4, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-17-03241

BEFORE: LAZARUS, J., STABILE, J., and MUSMANNO, J.

OPINION BY LAZARUS, J.: **FILED OCTOBER 05, 2021**

Cascade Funding Mortgage Trust 2017-1 (Cascade) appeals from the judgment entered in favor of Appellees, Charleen L. and Michael S. Smeltzer (the Smeltzers), after the court dismissed Cascade's underlying mortgage foreclosure action against the Smeltzers. We affirm.

In February of 2007, the Smeltzers purchased their primary residence (Property) located in Mount Joy, Lancaster County, Pennsylvania, for $90,000. In connection with the sale, the Smeltzers signed a promissory note and mortgage agreement granting Mortgage Electronic Registration Systems, Inc., as nominee for Imperial Lending, LLC, a first priority mortgage lien against the Property. The mortgage was recorded on March 6, 2007, in the Office of the Recorder of Deeds of Lancaster County. The mortgage was subsequently assigned to Cascade.

On February 1, 2008, the Smeltzers entered into a loan modification agreement that lowered the interest rate and monthly payment amount of the mortgage but increased its principal balance to $97,073.74. On September 27, 2011, the Smeltzers filed a Chapter 13 bankruptcy petition, in the United States Bankruptcy Court for the Eastern District of Pennsylvania, to restructure their debt. On October 11, 2011, the Smeltzers filed a proposed Chapter 13 plan, which included the mortgage on the Property. On June 4, 2012, the Smeltzers filed a proposed Amended Chapter 13 Plan (the Plan) which was confirmed by order on July 3, 2012. Under the Plan, the Smeltzers intended to cure pre-petition arrears of $19,438.73, over a 5-year period, while continuing to make regular monthly mortgage payments. The bankruptcy filing stayed all actions pursuant to the automatic stay provision of the Bankruptcy Code. *See* 11 U.S.C.S. § 362. The Smeltzers made the following post-petition payments: October 1, 2011; November 1, 2011; December 1, 2011; and January 1, 2012. On October 19, 2012, Cascade's predecessor-in-interest, Waterfall Victoria Master Fund (Waterfall), filed a motion for relief from stay, claiming that the Smeltzers were in arrears of $18,550.18, having defaulted on monthly post-petition payments from February 1, 2012, through October 1, 2012.

On April 3, 2013, the parties resolved the motion for relief from stay by entering into a stipulation, in federal bankruptcy court, that permitted Waterfall to receive the Smeltzers' monthly mortgage payments directly,

beginning with the May 1, 2013[1] payment.[2] The stipulation also contained conditions for default that would permit Waterfall to file a certificate with the bankruptcy court and seek relief from the automatic stay. On March 5, 2014, Waterfall sent the Smeltzers' attorney a letter informing him that the Smeltzers were in default, being past due for their October 1, 2013 through February 1, 2014 payments, and owed a total of $4,955.60. The letter demanded payment within 15 days of the date of the notice of default and, should the default not be cured, Waterfall indicated that it would be filing a certificate of default. In April of 2014, Waterfall filed a certificate of default claiming that the Smeltzers "had defaulted under the terms of a Stipulation between the parties[,] that notice of default was provided to [the Smeltzers] pursuant to the terms of such Stipulation[,]" and requesting that the bankruptcy court "[k]indly submit the [attached] Order . . . for Relief from the Automatic Stay." Certification of Default under Stipulation, 4/[undated]/13. On April 28, 2014, the bankruptcy court granted Waterfall "modified" relief from the automatic stay.

_____

[1] Between October 2012 and April 2013, the Smeltzers made three full payments and one partial payment toward the mortgage.

[2] Cascade notes in its brief that the Smeltzers' pre-petition delinquency payments under the Plan were to be repaid by the Smeltzers indirectly through the Chapter 13 trustee, while their post-petition regular monthly payments were to be paid directly by the Smeltzers on an ongoing basis. *See* Appellant's Brief, at 16 n.10.

On July 12, 2016, the Smeltzers and Waterfall were served with a notice of final cure payment[3] and completion of payments under the Plan from the Chapter 13 trustee assigned to the Smeltzers' case; the notice lists Waterfall as the creditor. On August 16, 2016, the bankruptcy court sent a notice, to all creditors and parties in interest, that the Chapter 13 trustee had filed his final report and account in the matter and that "[a]ny answer, objection, responsive pleading[,] or request for hearing with regard to the discharge of the debtors, including any request to delay the entry of discharge . . ., must be filed in writing with the Clerk of the U.S. Bankruptcy Court . . . within 30

---

[3] The notice of final cure payment states:

> [T]he debtor(s) in this matter ([]debtor[]) has completed all payments required to cure the default in the claim filed by the following creditor, and **this claim has been *paid in full***:
>
> **Creditor: Waterfall Victoria Master Fund**
>
> * * *
>
> **Within 21 days of the service of this Notice, in accordance with Federal Bankruptcy Rule 3002.1(g), a creditor holding a claim secured by a security interest in the principal residence of debtor shall file and serve on debtor, counsel for debtor, and the standing trustee a statement indicating whether (1) it agrees the debtor has paid in full the amount required to cure the default on the claim and (2) debtor is otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).**

Notice, 7/11/16 (emphasis in original and added; unnecessary capitalization omitted).

days from the date of this notice. [Furthermore, **i]n the absence of any objection**, the Court may enter the Order of Discharge." Notice, 8/16/16 (emphasis added). On September 22, 2016, when no objection to the discharge had been filed, the Smeltzers were granted a discharge from bankruptcy and permitted to complete the Plan. **See** 11 U.S.C. § 1328(a). The mortgage was deemed to be current as of the date of discharge. The bankruptcy discharge order specifically states that while creditors cannot personally collect from the debtors for discharged debts, "a creditor may have the right to foreclose [on] a home mortgage." Order of Discharge, 9/22/16, at 1.

On October 20, 2016, the Smeltzers' attorney sent the loan servicing company, Statebridge Company, LLC, a letter enclosing the October mortgage payment and also a notice from the bankruptcy court indicating that all payments would be deemed up-to-date unless objections were filed by the mortgage company. The letter further states that because no objections were filed, the bankruptcy was discharged on September 22, 2016. Letter, 10/20/16.

On November 14, 2016, Waterfall sent the Smeltzers a pre-foreclosure notice of intention to foreclose, stating that they are "in serious default" on their mortgage payments, with a total past due amount of $42,137.81. **See** 41 P.S. § 403 (Act 6); 12 Pa.Code § 31.203. The notice permitted the Smeltzers to cure the default within 30 days; if the default was not cured in full within that time period, Waterfall stated that it "intend[ed] to instruct [its]

attorneys to start a lawsuit to foreclose [on their] mortgaged property." Pre-Foreclosure Notice, 11/14/16, at 2. On March 31, 2017, Waterfall filed a mortgage foreclosure complaint against the Smeltzers alleging that the Smeltzers defaulted on paying the mortgage in July of 2012, and, as of January 17, 2017, they owed $145,301.92[4] on the mortgage.

On May 2, 2017, the Smeltzers filed an answer with new matter to the complaint specifically denying that the mortgage was in default, **see** Defendant's Response to Plaintiff's Civil Action, 5/2/17, at ¶ 8, and averring that they executed and completed a Chapter 13 plan that "include[ed] all payments due to Plaintiff." **Id.** Moreover, the Smeltzers stated that "the Chapter 13 Bankruptcy cured the deficiency which existed at the filing of [their b]ankruptcy and at the time of their discharge." **Id.** Finally, the Smeltzers claimed that: (1) "Plaintiff failed to provide [them] any [required] notice" that the mortgage was not up to date; (2) "the mortgage has been deemed to be current by operation of law[;]" (3) "subsequent to the discharge of the Bankruptcy, the [Smeltzers] tendered monthly payments, by and through counsel [to] the servicer for the mortgage company[;]" and (4) "[they] are fully prepared to make all post-discharge payments on the mortgage." **Id.** at ¶¶ 8, 10. The Smeltzers asked the court to dismiss Cascade's complaint with

---

[4] This figure includes the principal balance, interest on the loan through January 17, 2012, at a rate of 8%, and funds owed by and to the borrower.

prejudice, order Cascade to accept payments due from October of 2016 through the present, and fully reinstate their mortgage. *Id.* at 3.

Waterfall filed a reply to the Smeltzers' new matter specifically denying "that [Waterfall] received a Notice from the Bankruptcy Trustee[, but, rather, t]he Notice was sent to an old address of Statebridge."[5]  Plaintiff's Reply to New Matter and Counterclaim, 5/22/17, at ¶ 13.  Moreover, Waterfall's reply sought "judgment *in rem* be entered in its favor . . . for foreclosure and sale of the mortgaged premises . . .  in the amount due as set forth in [its] complaint plus additional pre- and post-judgment interest at the contractual rate, together with additional late charges, additional corporate advances [and] escrowed advances . .  [and] attorney's and court costs[.]" *Id.* at 2.

On April 8, 2018, Waterfall filed a motion for summary judgment; the Smeltzers filed a response to the motion on May 4, 2018.  On November 26, 2018, the trial court denied Waterfall's summary judgment motion.

A bench trial was held on October 1, 2019, before the Honorable Jeffrey D. Wright, at which a Statebridge employee and Mrs. Smeltzer testified.  On

---

[5] The notice of intent to foreclose on the Smeltzer's property was sent from Statebridge Company, LLC, Waterfall's loan servicer.  The notice lists Statebridge's address as 100 S. Greenwood Village, CO 80111.  The bankruptcy court's notice of final cure payment and completion of payments under the Plan was sent to Waterfall, c/o Statebridge Company, LLC, 4600 S. Syracuse, Ste. 700, Denver, CO 80237.  However, Waterfall lists the address for Statebridge Mortgage Company, LLC, as 5680 Greenwood Plaza Blvd., Suite 100, Greenwood Village, CO 80111, in its reply to new matter and counterclaim.  Because Cascade never raised the issue of the notice of final cure being sent to the wrong address at trial, in post-trial motions, or in its appellate brief, we find any notice claim to be waived. *See* Pa.R.A.P. 302.

December 19, 2019, the court entered an order in favor of the Smeltzers and dismissed Cascade's[6] complaint. The court found that "[the Smeltzers] presented enough evidence to show their debt for arrearages on the mortgage was paid in full pursuant to the Chapter 13 Plan." Trial Court Opinion, 6/25/20, at [4]. On December 26, 2019, Cascade filed a post-trial motion seeking a new trial for damages. The trial court denied the motion on December 30, 2019. Cascade timely filed a notice of appeal[7] and court-

_____

[6] On May 20, 2019, Cascade praecipied for voluntary substitution as the party plaintiff, pursuant to Pa.R.C.P. 2352, as Waterfall's successor. On February 7, 2018, an assignment transferring the mortgage from Waterfall to Cascade was recorded in the Office of the Recorder of Deeds for Lancaster County.

[7] On March 16, 2020, this Court issued a rule to show cause as to whether judgment had been entered on the trial court docket, as required by Pa.R.A.P. 301, and whether post-trial motions were timely filed. *See Chalkey v. Roush*, 805 A.3d 491 (Pa. 2002) (under Pa.R.C.P. 227.1, party must file post-trial motions at conclusion of trial to preserve claims that party may wish to raise on appeal). On April 27, 2020, Cascade filed a response to the rule to show cause stating that Pa.R.C.P. 236 notice of entry of the trial court's December 13, 2019 order was not reflected on the Lancaster County online docket until December 26, 2019—when it filed its post-trial motions. Post-trial motions were denied on December 30, 2019, and Rule 236 notice of this order was entered on January 2, 2020. Cascade filed its notice of appeal on January 29, 2020. Thereafter, Cascade praecipied for judgment to be entered in the matter on April 1, 2020, in compliance with the Pennsylvania Supreme Court's second supplemental order stating that "any legal papers or pleadings which are required to be filed between March 19, 2020, and April 30, 2020, shall be deemed to have been timely filed if they are filed by May 1, 2020, or on a later date as permitted by the appellate or local court in question." Appellant's Response to the March 16, 2020 Rule to Show Cause, 4/27/20, at 3. On April 30, 2020, the trial court entered judgment in favor of the Smeltzers. On May 29, 2020, our Court issued an order discharging its prior rule to show cause, referring the issue to the merits panel, and advising Cascade "that the issues may be revisited by the merits panel, and [that it]
*(Footnote Continued Next Page)*

ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, raising 24 potential issues. On June 25, 2020, the trial court filed its Rule 1925(a) opinion. On appeal, Cascade has limited its issues to the following two claims:

(1) Did the trial court err as a matter of law in entering judgment in favor of the Smeltzers against the weight of the evidence?

(2) Did the trial court err as a matter of law in making a determination reserved for the [b]ankruptcy [c]ourt?

Appellant's Brief, at 4-5 (renumbered for ease of disposition).

Upon appeal of a non-jury trial verdict, an appellate court considers the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law. When the appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

*Nicholas v. Hoffman*, 158 A.3d 675, 688 (Pa. Super. 2017).

---

should be prepared to address, in [it]s brief . . . the issue raised by this Court's March 16, 2020 Order." Order, 5/29/2020. Cascade filed a reply brief addressing the timeliness issue reiterating the same rationale presented in its response to our Court's rule to show cause. We concur with its Rule 236 analysis, rendering this appeal timely.

In its first issue, Cascade claims that the trial court committed reversible error in entering judgment in favor of the Smeltzers[8] where it "properly set forth the facts necessary to establish it has standing to foreclose and properly set forth the amounts due and owing [on the mortgage]." Appellant's Brief, at 12. Specifically, Cascade asserts that the evidence of record shows that the Smeltzers failed to make required payments to Waterfall during the bankruptcy case, as evidenced by the certificate of default filed by Waterfall and the bankruptcy court's order granting Waterfall relief from the court's automatic stay.

Instantly, the trial court found that: (1) because Cascade never complained, or presented evidence, of the Smeltzers' default, it is barred from now arguing that the Smeltzers are in arrears in their mortgage payments; and (2) the Smeltzers are not required to return to bankruptcy court to redetermine the status of their mortgage. The court also concluded that notice from the bankruptcy court, provided to both the debtor and creditor, indicated

_____

[8] With regard to Cascade's reference that the "[t]rial [c]ourt erred in finding for the Smeltzers **against the weight of the evidence**," Appellant's Brief, at 12 (emphasis added), we recognize that the trial court credited Charleen Smeltzer's testimony that she and her husband had successfully completed the bankruptcy plan, cured their mortgage default, and that the mortgage servicers had rejected their monthly post-discharge mortgage payments. **See** Trial Court Opinion, 6/25/20, at [6]. On the other hand, the court found that "Cascade and [its] predecessors engaged in an array of deceptive and uncooperative behavior during th[e] process." **Id.** As the trial court's credibility determinations are supported in the record from the witnesses' testimony at the bench trial, we do not find that the judgment was against the weight of the evidence. **Nicholas**, **supra**.

that all payments required to cure the default in the claim filed by the creditor were paid in full. Additionally, the court found that the Smeltzers presented credible testimony that for years they had not been credited with payments on the mortgage made through the bankruptcy trustee and the mortgage servicing company. Finally, the court determined that because the bankruptcy matter is closed, the bankruptcy court no longer has exclusive jurisdiction of the matter.

The Smeltzers assert that Cascade waived or was estopped from bringing its foreclosure action because it failed to object to the bankruptcy court's notice that the Smeltzers had completed all payments under the Plan. *See* Defendants' Response and New Matter, 5/2/17, at ¶ 14 (Smeltzers claiming Cascade "waive[d] the right to claim any pre-discharge payments remaining due [on the mortgage]" due to its predecessor's "fail[ure] to provide any response to the [bankruptcy t]rustee or the [b]ankruptcy [c]ourt."). Throughout the case, the Smeltzers consistently pled that they tendered additional pre- and post-petition mortgage payments to Cascade that were returned to them. At trial, Mrs. Smeltzer testified that she and her husband had deposited monthly post-discharge mortgage payments. *See* N.T. Bench Trial, 10/1/19, at 28 (Mrs. Smeltzer testifying she instructed attorney to "start beginning payments at the time the bankruptcy was discharged. . . . Every month it gets deposited into an account for mortgage payments."). Additionally, Mrs. Smeltzer testified that the monies deposited

into the mortgage account "would bring the mortgage nearly current for the period of time from [their] discharge." *Id.*

Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts. *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). If a debtor meets the eligibility requirements for relief under Chapter 13, he or she may submit to the bankruptcy court, for confirmation, a plan that modifies the rights of holders of secured or unsecured claims and provides for the payment of all or any part of any permitted claim. 11 U.S.C.S. § 1322(b)(6). A bankruptcy filing stays all actions under the Bankruptcy Code. *See* 11 U.S.C.S. § 362. The stay remains in force until the case is closed or dismissed, **or a discharge is granted** or denied. *Id.* at § 362(c)(2) (emphasis added).

Federal Rule of Bankruptcy Procedure 3002.1 provides, in relevant part:

> **(f) Notice of final cure payment.** Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. **The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g).** If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.
>
> **(g) Response to notice of final cure payment. Within 21 days after service of the notice under subdivision (f) of this rule, the holder <u>shall</u> file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2)**

**whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code[, 11 U.S.C.S. § 1322(b)(5)]. The statement shall itemize the required cure or post[-]petition amounts, if any, that the holder contends remain unpaid as of the date of the statement.** The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

**(h) Determination of final cure and payment.** On motion of the debtor or trustee filed within 21 days **after service of the statement** under subdivision (g) of this rule, **the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required post[-]petition amounts.**

**(i) Failure to notify.** If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

USCS Bankr.R. 3002.1(f)-(i) (emphasis added).

Instantly, on April 3, 2013, the Honorable Bruce I. Fox of the United States Bankruptcy Court for the Eastern District of Pennsylvania granted Waterfall relief from the court's automatic stay, but, at the same time, approved the parties' stipulation that "the relief shall be stayed so long as the [Smeltzers] make each and every payment in a timely and complete manner beginning with the May 1, 2013 payment." Stipulation Resolving Motion for Relief from Stay, 4/3/13. The stipulation further provided that should the Smeltzers default on any payment, Waterfall shall send the Smeltzers' counsel

notice advising of said default, give the Smeltzers 15 days to cure such default, and, if the default is not cured within that timeframe, Waterfall's "counsel shall file a Certificate of Default with the Court and a proposed Order requesting final relief from the automatic stay." *Id.* Finally, the stipulation provides that "[a]ny Certificate of default filed with the Court shall indicate that Creditor's counsel has confirmed that no payments have been made to Waterfall Victoria Master Fund 2008-1 Grantor Trust, Series A." *Id.*

In April of 2014, Waterfall filed a certificate of default certifying that the Smeltzers had defaulted under the terms of the parties' stipulation and requesting that the bankruptcy court enter an order for relief from the automatic stay. On April 28, 2014, the bankruptcy court entered an order **modifying** the automatic stay and "allow[ing Waterfall] to exercise any and all of its remedies under its loan documentation and under state law to proceed with foreclosure and/or Sheriff's Sale of the subject property located at: 499 Martin Avenue, Mount Joy, PA 17552." Order, 4/28/14. *Cf.* Rule 3002.1(a) ("Unless the court orders otherwise, the notice requirements of this rule cease to apply when an order **terminating or annulling** the automatic stay becomes effective with respect to the residence that secures the claim.") (emphasis added). However, Waterfall did not file the instant mortgage foreclosure action against the Smeltzers until March 31, 2017, almost three years later, alleging that the Smeltzers defaulted on paying the mortgage in July of 2012, and, as of January 17, 2017, they owed $145,301.92 on the mortgage.

Prior to Waterfall filing the foreclosure action, but after it filed the certification of default, the bankruptcy court notified Waterfall that the Chapter 13 trustee had filed his final report and account in the matter and that "[i]n the absence of any objection, the Court may enter the Order of Discharge." Notice of Final Report and Account, 8/16/16. On September 22, 2016, when no objection to the discharge had been filed, the Honorable Ashely M. Chan of the United States Bankruptcy Court for the Eastern District of Pennsylvania, entered an order discharging the Smeltzers from bankruptcy and permitting them to complete the Plan. Order of Discharge, 9/22/16. **See** 11 U.S.C. § 1328(a). The mortgage was deemed to be "paid in full" as of the date of discharge. **See** Notice of Final Cure Payment and Completion of Payments Under the Plan, 7/12/16.

Rule 3002.1(f) notice "applies in Chapter 13 cases to claims secured by an interest in the debtor's principal residence for which a plan provides the debtor will make contractual installment payments." ***In re: Meyer v. Wells Fargo Bank N.A.***, 2018 WL 1663292, at *7 (Bankr. M.D. Pa. 2018) (citation omitted).[9] Rule 3002.1 was intended to "provide a prompt, efficient, and cost-effective means to determine whether there is a question as to the status of a debtor's home at the conclusion of the [C]hapter 13 case." ***Id.*** at *2 (Bankr.

_____

[9] Notably, Chapter 13 permits modification of "the rights of holders of secured and unsecured claims, **except those wholly secured by real estate mortgages**." 11 U.S.C.S. § 1322 (Senate Report No. 95-989) (emphasis added).

- 15 -

M.D. Pa. 2018), citing **In re Carr**, 486 B.R. 806, 808 (Bankr. E.D. Va. 2012) ("Rule 3002.1 is an effort to ensure that a debtor is fully informed about the amounts he owes and is not surprised upon leaving bankruptcy.").

Despite Cascade's **right**[10] to pursue a foreclosure action against the Smeltzers, Rule 3002.1(f) is clear that a holder of a claim has an "**obligation** to file and serve a response under subdivision (g)" of the rule. USCS Bankr.R. 3002.1(f) (emphasis added). Moreover, under Rule 3002.1(g), a holder's obligation to file and serve a statement is mandatory. **Id.** at 3002.1(g) (holder "**shall** file and serve . . . a statement indicating [] whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and [] whether the debtor is otherwise current on all payments[.]"). Thus, it was Cascade's burden to establish the Smeltzers' arrearage prior to the bankruptcy discharge. **See In re Kreidler**, 494 B.R. 201 (Bankr. M.D. Pa. 2013) (since holder had burden to establish post-petition arrearage, when holder failed to appear at hearing in response to Rule 3002.1 notice, holder waived opportunity to advance claim).

Here, where Waterfall, Cascade's predecessor-in-interest, never filed a responsive statement to the court's Rule 3002.1 notice of final cure payment indicating its disagreement with the proposed cure of default on the Smeltzers'

---

[10] Our decision today by no means precludes Cascade from filing a foreclosure action in the future if the Smeltzers default on the mortgage. **Owen v. Owen**, 500 U.S. 305, 308-09 (1991) (Bankruptcy Code provides creditor's right to foreclose on mortgage; mortgage survives or passes through bankruptcy).

mortgage obligation or claiming that the Smeltzers were not current on their Plan payments, it has waived any right to contest whether the Plan was completed satisfactorily, the accuracy of the post-petition amount, or whether any pre-discharge payments remain due.[11] *See* Trial Court Opinion, 6/25/20, at [5] (court found no testimony or evidence "to even hint" that Cascade or any of its predecessors filed any Rule 3002.1(g) statement contesting Smeltzers' full compliance with court-approved bankruptcy plan). *See also Kreidler v. Bank of N.Y. Mellon Trust Co.*, 494 B.R. 201 (U.S. Bankr. Ct. M.D. Pa. 2013) (Rule 3002.1 creates procedure requiring creditor to respond to notice indicating whether "there are disagreements to be resolved by the court on request of the debtor or trustee").

Moreover, the trial court credited Mrs. Smeltzer's testimony that she and her husband "continued to pay their monthly mortgage into escrow, despite the many roadblocks that their creditors set up to prevent the fulfillment of their monthly mortgage obligation," Trial Court Opinion, 6/25/20, at [6], and that "[e]ven when [they] submit[ted] what the Smeltzers, together with their attorney, ascertained was the requested monthly payment, the

_____

[11] Moreover, because Cascade filed no Rule 3002.1(g) statement disagreeing with the final cure payment notice, the Smeltzers had no reason to file a Rule 3002.1(h) motion seeking a hearing to determine whether they cured the default and paid all required post-petition amounts. Accordingly, Cascade should not now be able to come to state court to foreclose on the mortgage, seeking additional payments that were never outlined in a statement or response to the bankruptcy trustee's notice that the Smeltzers had paid in full any amount required to cure a default on the claim.

servicers rejected payment." *Id. See also* Cascade's Trial Brief, 10/31/19, at 3 n.2 ("Defendant[s'] alleged five payments were tendered in October 2016, November 2016, December 2016, January 2017, and February 2017. Four of the five payments were returned, one payment in the amount of $993.19 was applied [to] the suspense balance on Defendants' loan account.").

Thus, when the evidence is viewed in the light most favorable to the Smeltzers, *Nicholas*, *supra*, we find that the court properly concluded that the Smeltzers "had completed all payments required to cure the default in the claim filed by [Waterfall], and [that] this claim had been paid," Notice of Final Cure Payment and Completion of Payments under the Plan, 7/12/16, and that the Smeltzers had tendered all post-discharge payments from October 2016-February 2017.[12] Thus, the court did not err in entering judgment in the Smeltzers' favor and dismissing Cascade's foreclosure complaint.

To the extent that Cascade argues the bankruptcy court has exclusive jurisdiction over this matter, we find no merit to the claim. A "United States Bankruptcy Judge is a judicial officer and orders and decrees which he or she may issue within the scope of his or her powers are entitled to the same credit

---

[12] While Mrs. Smeltzer testified on cross-examination that she, personally, had not made any payments during 2017 or 2018, she did not state whether her attorney or husband had made payments during those years. N.T. Bench Trial, 10/1/19, at 31. Because the trial judge found "Cascade and its predecessors engaged in an array of deceptive and uncooperative behavior during th[e] process," Trial Court Opinion, 6/25/20, at [6], we will not disturb the court's determination that the Smeltzers made their monthly post-discharge payments, together with their attorney, either directly to the servicer or into escrow. *Id.*

as orders and decrees of courts of general jurisdiction." ***Mintz v. Carlton House Partners, Ltd.*** 595 A.2d 1240, 1246 (Pa. Super. 1991) (citation omitted). ***See also*** U.S.C.A. Const. Art. 4, § 1; 28 U.S.C.A. § 1738 (state courts must give full faith and credit to judicial records and proceedings of federal court). The trial court specifically noted that its decision did not invade any determination made by the bankruptcy court. In actuality, Judge Wright's ruling upheld the bankruptcy court's order that stated the Smeltzers had been discharged from bankruptcy and that their payments had properly cured the mortgage default as of the time of discharge. ***See id.***; ***see also*** Trial Court Opinion, 6/25/20, at 6 ("[T]his [c]ourt will not interpret the subsequent Notice and Discharge beyond their four corners without further guidance, explanation, or order from the Bankruptcy Court.").

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/05/2021